**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00195-TBR-LLK**

ACT FOR HEALTH, d/b/a
Professional Case Management, *et al.*,         Plaintiffs/Counterclaim Defendants,

v.

UNITED ENERGY WORKERS
HEALTHCARE CORP., *et al.*,                    Defendants/Counterclaimants,

v.

COLD WAR PATRIOTS NON-PROFIT
CORPORATION,                                    Counterclaim Defendant.

**MEMORANDUM OPINION AND ORDER**

ACT for Health, doing business as Professional Case Management, along with its wholly-owned subsidiary, Professional Case Management of Kentucky, LLC (collectively, PCM), filed this action against United Energy Workers Healthcare Corp. and its wholly-owned subsidiary, Kentucky Energy Workers Healthcare, LLC (collectively UEW), bringing claims for unfair competition, for violating Kentucky's laws and regulations regarding the licensure of health care service providers, as well as for tortious interference with contractual and prospective business relationships. Now, PCM asks the Court to issue a preliminary injunction to enjoin UEW from providing allegedly unauthorized home-health care services in Kentucky. For reasons discussed more fully below, PCM's Motion for a Preliminary Injunction, [R. 57], is **DENIED**.

1

I.

A.

The instant dispute is between two providers of home-health care services to eligible individuals under the Energy Employees Occupational Illness Compensation Program Act of 2000 (EEOICPA), 42 U.S.C. §§ 7384 to 7385s-16.  Administered by the U.S. Department of Labor, the EEOICPA affords "benefits to individuals or their survivors for illnesses incurred from exposure to toxic substances while working for the Department of Energy or certain related entities."  *Watson v. Solis*, 693 F.3d 620, 622 (6th Cir. 2012).  Under the EEOICPA, eligible individuals may receive health-care services, including home-health care services and personal-care services, from designated providers, whom the Department of Labor reimburses.  *See* 42 U.S.C. §§ 7384e, 7384t; 20 C.F.R. §§ 30.400, 30.403.

The Commonwealth of Kentucky regulates providers of home-health care services, known as "home health agencies," and providers of personal-care services, called "personal services agencies," differently.  To provide home-health care services under Kentucky law, an entity must first obtain a "certificate of need" from the Cabinet of Health and Family Services to establish a "home health agency."  *See* Ky. Rev. Stat. § 216B.061(1)(a); *see also id.* § 216B.015(9), (13).  A "home health agency" is, in broad terms, an "organization . . . which provides intermittent health and health related services, to patients in their place of residence, either singly or in combination as required by a plan of treatment prescribed by a licensed physician."  902 Ky. Admin. Reg. 20:081, § 2.  "Health services," in turn, means "clinically related services provided within the

Commonwealth to two . . . or more persons, including but not limited to diagnostic, treatment, or rehabilitative services." Ky. Rev. Stat. § 216B.015(14).

To provide personal-care services, on the other hand, an entity must obtain certification from the Cabinet to operate a "personal services agency." Ky. Rev. Stat. § 216.712(1); *see also* 906 Ky. Admin. Reg. 1:180, § 2. Generally speaking, a "personal services agency" is an organization "that directly provides or makes provision for personal services." Ky. Rev. Stat. § 216.710(8). "Personal services," in turn, include:

> [a]ssisting with a client's ambulation and activities of daily living as defined in KRS 194A.700; . . . [f]acilitating the self-administration of medications if such medications are prepared or directed by a licensed health-care professional or the client's designated representative; . . . [p]roviding services which may be referred to as attendant care, in-home companion, sitter and respite care services, and homemaker services when provided in conjunction with other personal services; and . . . [p]roviding services that enable the client to live safely, comfortably, and independently.

*Id.* § 216.710(7)(a). The definition explicitly excludes, among other things, services that "require the order of a licensed health-care professional to be lawfully performed in Kentucky," *id.* § 216.710(7)(b)(6), as well as any "health-care entity or health-care practitioner otherwise licensed, certified, or regulated by local, state, or federal statutes or regulations," *id.* § 216.710(7)(b)(9).

ACT for Health, doing business as Professional Case Management, furnishes home-health care services to EEOICPA-eligible patients in Kentucky through its wholly-owned subsidiary, Professional Case Management of Kentucky, LLC. [R. 1 at 3, ¶¶ 12–13 (Complaint).] PCMK is a licensed "home health agency" under Ky. Rev. Stat. § 216B.105(1). [*See* R. 57-2 at 3 (Home Health Agency License).] United Energy Workers Healthcare Corp., through its wholly-owned subsidiary, Kentucky Energy Workers Healthcare, LLC, also furnishes home-health care services to EEOICPA-eligible

3

patients in Kentucky. [*See* R. 13 at 1, ¶¶ 2–3 (Answer); R. 14 at 1, ¶¶ 1–3 (Counterclaim).] KEW is a licensed "personal services agency" under Ky. Rev. Stat. § 216.712(1), [*see* R. 61-2 at 1 (Personal Services Agency License)], and, more recently, a "home health agency" too, at least provisionally, [*see* R. 61-1 at 54 (*In re Kentucky Energy Workers Healthcare, LLC*, No. HSAHB CON 16-1008 (September 19, 2016)).]

PCM alleges that UEW has been providing home-health care services without the necessary licensure as a "home health agency." [*See* R. 1 at 5, ¶¶ 19–20.] In support of that proposition, PCM points to a number of claim forms that UEW filed with the Department of Labor between April 2014 and September 2016. [*See* R. 67 at 1–12 (OMB Form 1500).] In order to bill the Department for care furnished under the EEOICPA, a provider, such as UEW, must itemize and identify each service performed using the Physician's Current Procedural Terminology (CPT) code. *See* 20 C.F.R. § 30.701(a)–(b). Based on the CPT codes UEW included in its claim forms, it appears as though KEW has been providing skilled in-home nursing care in Kentucky since at least April 2014.[1] [*See* R. 67 at 1–12 (billing for services provided under CPT codes "T1017," "T1030," and "S9123"); R. 57-9 at 1–2, ¶¶ 3–6, 8–9 (Fletcher's Declaration).]

In addition, PCM relies on findings from the Cabinet for Health and Family Services, Office of the Inspector General's investigation into whether UEW had been providing services that exceeded the scope of those allowed for a personal services agency. [*See* R. 63-3 at 1 (Statement of Deficiencies).] The investigation revealed, in pertinent part, that UEW had provided "focused and comprehensive nursing assessments, lung monitoring medication review, vital sign monitoring, oxygen saturation monitoring,

---

[1] The Department of Labor lists eleven of the most common billing codes in the *Unified Federal (EEOICPA) Procedure Manual* § 3-0300, ex. 4 (Jan. 2010), which Curtis Fletcher makes reference to in his declaration.

monitoring of skin condition, and education." [*Id.* at 2.] Based on a sample of six patients' records, the Inspector General concluded that UEW had been furnishing services far in excess of those authorized under Kentucky law. [*See id.* at 1–3.]

UEW, as might be expected, disagrees with PCM's assessment. UEW does not address PCM's argument about its billing records, other than to say that it maintained those billing records in compliance with 906 Ky. Admin. Reg. 1:180. [*See* R. 61 at 3–4 (Response).] It does point out, though, that UEW has tendered a plan of correction in response to the investigation, [*see* R. 61-5 at 1–6 (Plan of Correction)], which the Inspector General subsequently accepted, [*see* R. 61-4 at 1–2 (Letter from Inspector General)].

**B.**

PCM filed this action against UEW, bringing claims for unfair competition, for violating Ky. Rev. Stat. §§ 216B.010 to .990, as well as for tortious interference with a contract and intentional interference with a prospective business relationship. [*See* R. 1 at 6–8, ¶¶ 28–50.] Now, PCM asks the Court to issue a preliminary injunction (1) to enjoin UEW "from providing home health care services" beyond the scope of those properly provided by a personal services agency; (2) to require UEW "to produce and supplement, every two weeks, billing record disclosures to confirm that [it is] no longer providing care beyond [its] licensure"; and (3) to oblige UEW to send "notice to [its] patients, and [its] patients' physicians, who require home health care services," announcing its "inability to continue to provide [those patients] with home health agency care so that they can select a licensed and authorized provider of their choice." [R. 57-1

5

at 2 (Proposed Preliminary Injunction).]  UEW opposes PCM's request.  [*See* R. 61 at 4–14.]

## II.

A preliminary injunction under Federal Rule of Civil Procedure 65 is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).  When determining the propriety of issuing a preliminary injunction, the Court weighs the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (quoting *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)).  Each of these factors should "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction."  *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) (quoting *Leary*, 228 F.3d at 736), *cert. denied sub nom. Liberty Coins, LLC v. Porter*, —— U.S. ——, 135 S. Ct. 950 (2015).  The party seeking the preliminary injunction bears the burden of justifying such relief.  *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423 (1974)).

### III.

PCM seeks the extraordinary remedy of a preliminary injunction to stop, in essence, UEW from providing allegedly unauthorized home-health care services in Kentucky. To determine the propriety of that request, the Court will address each of the four factors, discussed above, in turn. Ultimately, the Court finds that the balance of those factors weighs against issuing the sought-after injunction.

### A.

To begin, PCM has not demonstrated a strong likelihood on the merits of its first, and principal, claim for common-law unfair competition. [*See* R. 1 at 6–7, ¶¶ 30, 34–35.] While a common-law action for unfair competition has long been recognized in the Commonwealth, and elsewhere, its boundaries remain somewhat nebulous. The essence of the tort "is the bad-faith misappropriation of the labors and expenditures of another likely to cause confusion or to deceive purchasers as to the source or origin of goods." *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 871 (Ky. Ct. App. 2007) (quoting 54A Am. Jur. 2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 1107 (1996)). Unfair competition under Kentucky law, then, generally "consists of either (1) injuring the plaintiff by taking his business or impairing his good will, or (2) unfairly profiting by the use of the plaintiff's name, or a similar one, in exploiting his good will." *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 139 (Ky. 1969).

PCM's allegations fall far afield from that definition. The basis of PCM's unfair-competition claim rests, in relevant part, on the accusation that UEW's provision of home-health care services without the required licensure gives UEW an unfair advantage

7

in the marketplace. [*See* R. 1 at 6, ¶ 30.] While PCM's allegation might be true, it does not appear to support an actionable claim for unfair competition under Kentucky law. *See Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789–90 (W.D. Ky. 2001) (remarking that "Kentucky has only recognized the claim of unfair competition in the realm of trademarks").

PCM sees things differently. "It is well-established in Kentucky," PCM says, "that the provision of unregulated services, in violation of Kentucky's statutes and regulations, constitutes unfair competition." [R. 57 at 11 (Motion for Preliminary Injunction); *see also* R. 72 at 5–8 (Reply).] In support of that broad proposition, PCM points to a single source of authority: the then-Kentucky Court of Appeals' decision in *McCormack v. Cole*, 97 S.W.2d 33 (Ky. 1936). [*See* R. 57 at 11; R. 72 at 6–7.]

In *McCormack*, the licensed operator of a taxi service sought to enjoin an unlicensed competitor from transporting passengers unless the competitor, too, obtained the appropriate license. 97 S.W.2d at 34. The competitor conceded noncompliance with Kentucky's licensure statute, but denied that it had engaged in the business of taxiing. *Id.* The trial court entered judgment against the operator without explanation. *Id.* However, in the light of overwhelming evidence that the competitor had been "regularly engaged" in the "unlawful enterprise" alleged, the Kentucky Court of Appeals reversed. *Id.* at 34–35. It held injunctive relief to be appropriate. *Id.* at 35.

PCM reads *McCormack* as recognizing a cause of action whereby "a competitor who is otherwise in compliance with [controlling] statutes and regulations may seek injunctive relief to prevent" an unlicensed competitor from participating in the marketplace. [R. 57 at 11.] The problem with PCM's interpretation, however, is that the

8

operator in *McCormack* had an explicit, statutory cause of action against the competitor. *McCormack*, 97 S.W.2d at 34 (quoting Ky. Stat. § 2739j-92 (Supp. 1933)). In detail, section 2739j-92 of Carroll's Kentucky Statutes expressly provided that:

> Any common carrier, contract carrier [taxi drivers] or any other person, firm or corporation may, at the instance of the Commission or of any person having an interest in the subject-matter, be enjoined by the courts of this State from any violation of the provisions of this Act, or of any order, rule, regulation or requirement of the Commission.

*Id.* (alteration in original) (quoting Ky. Stat. § 2739j-92 (Supp. 1933)). Section 2739j-92, the Court of Appeals explained, supplied the operator in *McCormack* with "complete authority for the maintenance of [its] action to obtain" injunctive relief against the competitor. *Id.* at 34–35.

*McCormack*, then, cannot be read as broadly as PCM has professed. In the absence of that authority, the legal basis of PCM's unfair-competition claim is unclear. PCM's likelihood of success on the merits of that claim is questionable too.

For many of the same reasons, PCM's claim alleging that UEW has violated chapter 216B of the Kentucky Revised Statutes is unlikely to make headway either. [*See* R. 1 at 7, ¶¶ 37, 39–41.] Ostensibly, PCM relies on Ky. Rev. Stat. § 446.070 as the basis for that claim. [*See* R. 72 at 8–9.] Ky. Rev. Stat. § 446.070 creates a private right of action for any person injured on account of a statutory violation so long as two conditions are satisfied. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011); *accord Ezell v. Christian Cty.*, 245 F.3d 853, 856 (6th Cir. 2001). First, the person injured must belong to the class of persons intended to be protected by the statute. *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99–100 (Ky. 2000). Second, the injury suffered must be of the type that the statute was designed to prevent. *McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224, 229 (Ky. 2015).

9

Even assuming UEW violated chapter 216B, PCM does not appear to be in the class of protected persons. Ky. Rev. Stat. § 216B.010 states the General Assembly's purpose for licensing home health agencies. It reads, in pertinent part, "the licensure of health facilities and health services is a means to insure that the citizens of this Commonwealth will have safe, adequate, and efficient medical care." Ky. Rev. Stat. § 216B.010. "The statute's end goal in implementing its licensure provisions, then, is to protect *users* of Kentucky health care facilities." *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 823 (E.D. Ky. 2014) (emphasis added); *see also United States ex rel. Doe v. Jan-Care Ambulance Serv.*, —— F. Supp. 3d ——, ——, 2016 WL 2843909, at *4 (E.D. Ky. 2016) (same).

PCM is not a user of health facilities or health services. It is a provider of them. Nothing in chapter 216B, including the General Assembly's statement in section 216B.010, seems to be intended to protect providers of those services. *Jan-Care Ambulance Serv.*, —— F. Supp. 3d at ——, 2016 WL 2843909, at *4; *cf. Vanhook*, 67 F. Supp. 3d at 823 (finding that resident of a long-term care facility was in the class of persons intended to be protected). So, it appears that PCM is not among those chapter 216B was designed to protect. Accordingly, the likelihood of PCM succeeding on this claim is, likewise, doubtful.

Last but not least, PCM has not demonstrated a strong likelihood of success on its claims for tortious interference with a contract or intentional interference with a prospective business relationship. [*See* R. 1 at 8, ¶¶ 44–50.] In Kentucky, a claim for tortious interference with a contract requires (1) the existence of a contract, (2) knowledge thereof, (3) the intent to cause a breach, (4) and conduct which, in fact, caused

10

a breach, (5) that resulted in damages, (6) in the absence of any privilege or justification to excuse that conduct. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. Ct. App. 2012); *accord Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 618–19 (W.D. Ky. 2009), *aff'd sub nom. Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291 (6th Cir. 2011). Closely related, an action for intentional interference with a prospective business relationship requires (1) the existence of a valid business relationship or its expectancy, (2) knowledge thereof, (3) an intentional act of interference, (4) taken with an improper motive, (5) which caused (6) special damages. *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. Ct. App. 2014); *accord Griffin v. Jones*, ––– F. Supp. 3d –––, –––, 2016 WL 1092879, at *7 (W.D. Ky. 2016).

Here, PCM failed to discuss either of these claims in its initial briefing. [*See* R. 57 at 10–12.] It devoted only a single paragraph to explaining its claim for intentional interference with a prospective business relationship later on, but offered no meaningful response as to why, for example, it has a valid business relationship or its expectancy with potential, EEOICPA-eligible clients in Kentucky. [*See* R. 72 at 10.] In light of the parties' limited briefing on that (and other) points, the likelihood of success on either, or both, of those claims is speculative at this juncture.

### B.

Next, PCM has not demonstrated a realistic possibility of irreparable harm. PCM identifies two injuries it might suffer absent an injunction. First, PCM claims that it has lost customers and market share on account of the competition between it and UEW in the home-health services arena. [*See* R. 57 at 13; R. 72 at 10–12.] The loss of market share, it is true, most often qualifies as an irreparable injury because the damages flowing

11

from that harm are difficult to compute. *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2015). On the record before it, however, the Court finds that computing PCM's losses does not pose such an insurmountable task as to rise to the level of an irreparable injury. [*See* R. 72 at 10 ("In the past two years, UEW has unlawfully served [seventy-seven] patients in three of the four counties in which PCM [operates] . . . .").] PCM's losses are better characterized as monetary and, therefore, are not irreparable. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (holding that "harm is not irreparable if it is fully compensable by money damages"); *Lexington-Fayette Urban Cty. Gov't v. BellSouth Telecommunications, Inc.*, 14 F. App'x 636, 639 (6th Cir. 2001).

Second, PCM alleges the UEW's unlawful provision of home-health services somehow tarnishes the reputation of lawful providers, such as PCM. [*See* R. 57 at 13.] The loss of "established goodwill may irreparably harm a company." *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001). However, the Court fails to see how UEW's participation in the marketplace, even absent appropriate licensure, affects the established goodwill between PCM and its customers. In sum, PCM does not face a realistic threat of irreparable harm.

### C.

Moreover, issuance of PCM's requested injunction carries the possibility of causing some harm to UEW. In the main, PCM asks that the injunction require UEW, among other things, to notify its patients that it must cease providing care to them on account of this dispute. [*See* R. 57-1 at 2.] Issuing an injunction of that sort would, of course, adversely impact UEW's relationship with existing patients and its reputation in

the marketplace generally. [*See* R. 61 at 11–13.] The risk of harm to UEW weighs against entering an injunction.

### D.

Last, the public interest weighs neither for nor against issuance of an injunction. PCM argues, on one hand, that stopping UEW from "blatantly violating Kentucky's laws" relating to the provision of home-health care services "is consistent with the public interest." [R. 57 at 15; *see also* R. 72 at 13–15.] The public has a strong interest in seeing medical providers regulated consistent with Kentucky law. *See Tri-Cities Holdings LLC v. Tenn. Health Servs. & Dev. Agency*, 598 F. App'x 404, 412 (6th Cir. 2015). However, UEW maintains that entering an injunction of this sort needlessly interferes with the role of the Cabinet in overseeing entities such as it and PCM. [*See* R. 61 at 13–14.] The public has a strong interest, too, in leaving the administration of the state's regulatory scheme to those officials without federal courts entangling themselves in that business. *See Rhinehart v. Scutt*, 509 F. App'x 510, 516 (6th Cir. 2013); *cf. R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500–01 (1941). Ultimately, the public interest as to the issuance of the injunction appears to be in a state of equipoise. In those circumstances, injunctive relief is not warranted.

## IV.

**IT IS HEREBY ORDERED** that ACT for Health and Professional Case Management of Kentucky, LLC's Motion for Preliminary Injunction, [R. 57], is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc: Counsel of Record

    United Energy Workers Healthcare Corp.
    614 East Main, Suite C
    Riverton, WY 82501

    Kentucky Energy Workers Healthcare, LLC
    614 East Main, Suite C
    Riverton, WY 82501