UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:15-CV-00195-TBR-LLK

ACT FOR HEALTH d/b/a PROFESIONAL CASE
MANAGEMENT and PROFESSIONAL CASE
MANAGEMENT OF KENTUCKY             PLAINTIFFS
                                    COUNTER-DEFENDANTS

v.

UNITED ENERGY WORKERS HEATHCARE CORP. and
KENTUCKY ENERGY WORKERS HEALTHCARE, LLC.    DEFENDANTS
                                             COUNTERCLAIMANTS

v.

COLD WAR PATRIOTS NON-PROFIT CORPORATION    COUNTER-DEFENDANT

**OPINION AND ORDER**

Senior Judge Thomas B. Russell referred this matter to Magistrate Judge Lanny King for ruling on discovery motions. (Docket #21).

Defendants United Energy Workers Healthcare Corp. and Kentucky Energy Workers Healthcare, LLC (collectively "UEW") filed a Motion to for Reconsideration (Docket #135) of this Court's February 2, 2017 Order Regarding Production of Patient Caregiver Notes. (Docket #95). Plaintiff Act for Health d/b/a Professional Case Management and Professional Case Management of Kentucky (collectively "PCM") filed a Response in Opposition (Docket #136). Fully briefed, this Motion is now ripe for adjudication.

For reasons detailed below, the Court DENIES the Motion for Reconsideration. (Docket #135).

**Background**

PCM is licensed to provide skilled and unskilled home health care services to patients in their own homes in four counties in Kentucky serviced by PCM (Lyon, Marshall, McCracken,

and Graves, hereinafter the "PCM Counties"). (Docket # 43 at 2; Docket #57 at 3). UEW is certified under Kentucky law to provide personal care (or "unskilled") services in Kentucky. (Docket # 35 at 1). PCM alleges that UEW engaged in unfair businesses practices, in part, by providing home health care services in Kentucky without having the necessary licenses to do so. (Docket # 43 at 2). Further, PCM alleges that UEW received reimbursement from the Department of Labor (the "DOL") for providing home health care services to individuals in Kentucky covered under the EEOICPA. (*Id.* at 3).

Prior to any discovery motions having been filed, the parties entered into a Protective Order (Docket #23) which provided for documents to be designated as "confidential" by both parties and limited those designated documents' usage and disclosure outside the instant lawsuit. *Id.* The parties also agreed to a system of assigning numbers to each individual receiving care to protect their privacy, avoiding producing documents with individuals' names. (Docket # 43 at 8).

Significant disputes between PCM and UEW arose regarding document production resulting in PCM's first Motion to Compel (the "First MTC"). (Docket #43). This Court granted the First MTC, in part, ordering UEW to provide PCM "full, redacted billing records for all individuals in Kentucky to whom UEW has provided services under the EEOICPA program" within 45 days following the entry of the Order. (Docket #49 at 5).

The First MTC Order was entered on August 2, 2016. (Docket #49). UEW did not produce any documents to PCM until final day for compliance under the Order, whereupon UEW provided a 39-page summary (the "Summary") in lieu of the "full billing records" previously ordered by this Court. (Docket #63 at 4). The Summary was designated "confidential" by UEW. The parties met and conferred, resulting in UEW producing OMB-1500 forms for all

Kentucky patients but still not providing Caregiver Notes, which all parties agreed are part of the full billing record. (Docket #63 at 4). The OMB-1500 production took place approximately one month after the deadline in mid-October of 2016. *Id.*

At some time following the September 16, 2016, deadline to produce full billing records, UEW did produce Caregiver Notes for five (5) specific patients identified by PCM (the "First Production"). (Docket #64 at 3). UEW claims that the Caregiver Notes for five patients took two UEW employees more than 70 hours to perform redactions on over three thousand (3,000) pages before they could be produced but did not indicate the actual cost of production. *Id.*

On October 24, 2016, PCM filed a Motion to Compel UEW to: 1) produce all "Caregiver Notes" relating to all clients UEW served in Kentucky; 2) produce an un-redacted list of all UEW's referral sources (the "Referral List"); and 3) remove the "confidential" designation from a previously produced billing summary. (Docket #63). Following consideration of the briefs filed by all parties, the Court ordered that PCM was to identify 31 patients by number, provide that list of numbers to UEW, and that UEW was to produce full Caregiver Notes for the 31 individual files selected by PCM.[1] (Docket #95). The Court's order also gave UEW the option to determine whether or not to redact the Caregiver Notes before production or to seek an alternative production method. (*Id.*).

On February 24, 2017, PCM selected 15 patients whose caregiver notes it wanted produced and provided that list to UEW. (Docket #135-1 at 3). On April 4, 2017, UEW produced caregiver notes for the 15 patients (the "Second Production"). Upon completion of the Second Production, UEW had produced a total of 20 sets of caregiver notes to PCM. Pursuant to

---

[1] As the current Motion for Reconsideration (Docket #135) only pertains to the caregiver notes production and does not address the referral sources or confidential designation issues also addressed in the Order at issue (Docket #95), those issues will not be further discussed in the instant order.

the Court's Order, there were an additional 16 sets of caregiver notes remaining (the "Remaining Production") to be produced by UEW after the Second Production was complete. (Docket #95).

The Second Production comprised over 15,000 pages, of mostly handwritten notes. (*Id.* at 3-4). UEW spent over $51,000 to produce those notes apparently utilizing a different system of production from the First Production, including the labor of two UEW employees, the employment of a contract review team, and work by UEW's counsel and support staff. (*Id.* at 4). Prior to supplying PCM with the Second Production, in March of 2017, UEW reached out to PCM requesting that PCM withdraw its request for the Remaining Production, alleging that the Remaining Production would be "unduly burdensome and time consuming." (*Id.*). UEW went on to state that it was considering requesting reconsideration of the Order (Docket #95) if PCM did not withdraw its request for the Remaining Production. (*Id.*).

PCM did not withdraw its request for the Remaining Production and on July 19, 2017, sent a list to UEW selecting the remaining 16 patients. (*Id.*). UEW estimates that it would likely spend an additional $50,000 producing the Remaining Production. (*Id.* at 7).

On October 2, 2017, UEW filed a Motion to for Reconsideration (Docket #135) of this Court's February 2, 2017 Order (Docket #95) regarding the production of the remaining 16 patient caregiver notes it was ordered to produce in the February 2, 2017 Order.

**Standard of Review**

The Court possesses the inherent power to reconsider its interlocutory orders and then modify or rescind those orders prior to the entry of a final judgment. *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943); *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922)). Moreover, Rule 54(b) states

that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Together, the common-law authority and Rule 54 give the Court the power to revisit its interlocutory orders. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).

It is appropriate for the court to reconsider an interlocutory order when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.*, at *2-3 (quoting *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009); *Rodriguez*, 89 F. App'x at 959). The Court has "significant discretion" to reconsider interlocutory orders. *Id.*, at *3 (quoting *Rodriguez*, 89 F. App'x at 959 n.7).

**DISCUSSION**

Defendant argues that the Court reconsider its February 2, 2017 Order (Docket # 95) (the "Order") based on what UEW frames as "new evidence" of the "burden UEW incurred in producing the [Second Production]…" (Docket #135-1 at 1). UEW claims that the cost of producing the Remaining Production would cause UEW to incur undue burden and expense, and would not be proportional to the needs of the case. (*Id.*).

Motions to reconsider must rely on new evidence and not information readily available during the prior proceedings. "Motions for reconsideration are limited in purpose to correcting errors of law or to present newly discovered evidence. 'Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during [the]

5

pendency of the summary judgment motion.' " *Am. Marietta Corp. v. Essroc Cement Corp.,* 2003 WL 463493 at * *3 (6th Cir. Feb.19, 2003) (quoting *Macdermid Inc. v. Electrochemicals Inc.,* 1998 WL 165137 at *19 n. 7 (6th Cir. March 31, 1998)).

Here, UEW presents evidence of the cost of producing the Second Production, and gives a detailed account of each stage of production, and the cost of each stage and argues that this cost was unknown until after the Second Production was at least underway, if not completed. (Docket #135-1 at 4). While the Court agrees that spending over $50,000 to produce roughly 15,000 pages of patient files seems large, this cost is not new evidence. What is new is the methodology which UEW chose to utilize when preparing the Second Production.

UEW previously produced 5 patient files of similar size (Docket #64 at 3) (stating that the First Production of 5 patient files consisted of over 3,000 pages). UEW claims preparation of the First Production of 5 patient files took two UEW employees more than 70 hours to perform redactions on over three thousand (3,000) pages. (*Id.*). UEW did not, however, explain how much the First Production cost, or why the Second Production required a contract review team, attorneys, a paralegal, litigation support employees at UEW's outside counsel, and drafting of review "protocol" amongst other activities in addition to the utilization of two UEW employees.

At no time until this stage has UEW discussed the actual production costs. Instead, without explaining why, UEW argues that the burden and expense of producing the patient files was "hypothetical" prior to the Second Production, without explaining how much the First Production cost or why there is such a marked difference (if any). (Docket #135-1 at 8). Quite simply, the cost of the Second Production, which contained the same types of handwritten notes as the First Production, is not new evidence. UEW could have provided this Court with evidence

of the <u>actual</u> cost of the First Production when making a proportionality argument at any time after the First Production was complete. UEW, however, chose not to make that argument until now, after the Court has addressed the patient file production issue, not once, but twice previously.

UEW also argues that it should not have to produce the documents un-redacted because PCM has chosen to redact client records it has previously produced, but admits that while the court has suggested that redaction of client records is appropriate, that other methods of producing the Remaining Production exist. (Docket #135-1 at 10) (UEW states, for example, that other "sensitive" materials have been produced under an attorney-eyes-only designation). The Court agrees that it is UEW's choice to redact the Remaining Production, but that it need not do so.

UEW may, if it so chooses, produce the Remaining Production in a fully redacted form,[2] and may also choose the method in which to review those redactions. However, as suggested by this Court in its prior Order (Docket # 95 at 14), UEW may also choose from alternative means of production, as suggested and agreed to by PCM, such as, producing the Remaining Production under an attorney-eyes-only designation with access limited to one PCM employee, or relying on the protective order currently in place and requesting to file the medical records under seal as needed throughout the remainder of the action. (Docket #136 at 6).

---

[2] It is worth noting that the purpose of redaction of medical records is to protect an individual who is not a party to an action and has not put his or her own medical status at issue from having his or her medical records become public knowledge and potentially cause "irreparable harm" to the non-party. *See e.g. Onex Credit Partners, LLC v. Atrium 5 LTD.*, No. CV 13-5629 (JMV), 2017 WL 4284490, at *2 (D.N.J. Sept. 27, 2017). Courts routinely grant motions for leave to file, under seal, medical records of non-parties whose medical records become part of litigation. *Id.* Here, UEW does not argue that redaction is appropriate because it is concerned with patient medical records becoming public knowledge. Instead, UEW argues that it must redact the medical records to "protect" its proprietary, confidential information from PCM. (Docket #135-1 at 10).

As UEW has failed to produce any "new evidence" in support of its Motion for Reconsideration, and as alternative methods that are less costly and less burdensome exist to produce the Remaining Production, UEW's Motion for Reconsideration is denied.

**ORDER**

IT IS HEREBY ORDERED that UEW's Motion for Reconsideration (Docket #135) is DENIED.

IT IS SO ORDERED


c:	Counsel